IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PETER KUNIMURA, <br><br> Defendant. | CR. NO. 19-00128 JMS <br><br> ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 41 |

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 41

### I. INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Peter Kunimura ("Defendant") moves for immediate release from Federal Correctional Institute Terminal Island ("Terminal Island"). ECF No. 41. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release. Thus, for the following reasons, the Defendant's Motion for Compassionate Release is DENIED.

### II. BACKGROUND

Defendant, currently 65 years old, is incarcerated at Terminal Island with a projected release date of December 18, 2022. *See* https://www.bop.gov/inmateloc/ (last visited March 16, 2022).

On January 6, 2020, Defendant pled guilty pursuant to a plea agreement to a single-count Information that charged him with knowingly and intentionally conspiring to distribute and possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  ECF Nos. 31, 32; *see also* ECF No. 16 at PageID # 41 (Information).

On an unspecified date, Defendant submitted a request for compassionate release to Terminal Island's warden, and that request was denied on November 17, 2020.  *See* ECF No. 44-1 at PageID # 255.  Beginning on November 18, 2020, Defendant filed a series of appeals, including a Regional Administrative Remedy Appeal, all of which were denied.  *See* ECF No. 35-1 at PageID ## 163-65, 168, 170-71.  Following the final appeal denial (dated June 1, 2021, *see id*. at PageID # 170), Defendant filed a pro se motion requesting appointment of counsel "to assist him with filing [for] compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i)."  ECF No. 35 at PageID # 159 (deemed filed on July 29, 2021).  On August 17, 2021, the court granted that motion.  *See* ECF No. 38; *see also* ECF Nos. 36, 37.

On February 11, 2022, Defendant filed a "Supplemental Emergency Motion to Reduce Sentence Under First Step Act" ("Motion").  ECF No. 41.[1]  The Government filed its Opposition on March 4, 2022.  ECF No. 45.  The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

### III.  DISCUSSION

**A.     Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1] Although the court considers Defendant's prior pro se filing to be a motion for appointment of counsel (i.e., not a compassionate release motion), *see* ECF Nos. 35, 36, 38, Defendant's motion for appointment of counsel contains certain information and documents that the court considers in relation to the instant Motion.  *See, e.g.*, ECF No. 35-1.

3

Accordingly, the court may reduce Defendant's sentence if (1) Defendant has exhausted the required administrative remedies; (2) the court finds there are "extraordinary and compelling reasons" warranting a sentence reduction; and (3) the court considers the § 3553(a) factors, to the extent they are applicable, and determines that the reduction is warranted under the circumstances. *See United States v. Keller*, 2 F.4th 1278, 1283–84 (9th Cir. 2021). If the court finds there are no extraordinary and compelling reasons warranting a sentence reduction, the court need not consider the § 3553(a) factors. *See Keller*, 2 F.4th at 1284 ("[A] district court that properly *denies* compassionate release need not evaluate each step."); *United States v. Gomez*, 2022 WL 543080, at *2 (9th Cir. Feb. 23, 2022) (mem.).

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided defendants with the ability to file motions for compassionate release on their own behalf (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). The Ninth Circuit has therefore determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a

sentence reduction. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

**B.     Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.[2] *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). Here, Defendant argues that compassionate release is warranted because his age and certain medical conditions elevate his COVID-19 risk, *see* ECF No. 41-1 at PageID ## 205-09, and Terminal Island does not provide an environment conducive to adequate self-care of his conditions, *see id*. at PageID ## 210-12. These arguments are unavailing, both separately and taken in combination.

   **1.     *Defendant's Medical Conditions and Age***

The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prisons']

---

[2] The parties agree that Defendant has exhausted his administrative remedies. *See* ECF No. 41-1 at PageID # 205; ECF No. 45 at PageID # 370.

statutory role, and its extensive and professional efforts to curtail the virus's spread.); *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020) (explaining that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence" (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020))).

Further, Defendant has not shown that the hardships he faces at Terminal Island differ significantly from any other Bureau of Prisons ("BOP") facility. At present, BOP reports that one inmate and one staff member at Terminal Island[3] have "confirmed active cases" of COVID-19. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited March 16, 2022). Although the court recognizes that COVID-19 cases could rise again at Terminal Island, the institution is presently doing well. And as COVID-19 vaccinations continue to be administered, the threat of a COVID-19 outbreak will continue to decrease over time.[4]

---

[3] Terminal Island currently houses 856 inmates. *See* https://www.bop.gov/locations/institutions/trm (last visited March 16, 2022).

[4] As of March 16, 2022, Terminal Island has completed full inoculations of 653 inmates and 243 staff members. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited March 16, 2022). And, as discussed further below, Defendant contracted, recovered from, and has been vaccinated against COVID-19. *See* ECF No. 41-12 at PageID ## 261, 281, 288, 361, 364.

Defendant argues that he suffers from hypertension, stage 3 kidney disease, asthma, and hyperlipidemia, and that each of these conditions elevates his risk of becoming seriously ill if he were to be infected with the COVID-19 virus again. ECF No. 41-1 at PageID ## 206-09. The court addresses each condition in turn.

Heart conditions—including "possibly" hypertension (high blood pressure)—"can make you more likely to get very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 16, 2022). Defendant appears to have been diagnosed with—and is being treated for—hypertension. *See* ECF No. 41-12 at PageID ## 260-62, 273, 286, 311. For purposes of this Order, the court assumes that this condition places him at increased risk should he contract COVID-19 again.

And according to the Centers for Disease Control and Prevention ("CDC"), "[h]aving chronic kidney disease of any stage can make you more likely to get very sick from COVID-19," *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 16, 2022). Defendant's stage 3 kidney disease thus elevates his risk should he contract COVID-19 again. *See* ECF No. 41-12 at PageID ## 262, 280-81, 283, 286, 311.

As for Defendant's asthma, the CDC states that chronic lung diseases—including "moderate to severe" asthma—"can make you more likely to get very sick from COVID-19," *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 16, 2022). Although Defendant appears to have been diagnosed with—and is being treated for—asthma, it is not clear whether his condition is "moderate to severe." *See* ECF No. 41-12 at PageID # 261 (indicating that Defendant's asthma is "mild intermittent," "well controlled," and that he "[u]ses [an] inhaler very rare[ly], only when he gets sick"). Regardless, the court assumes for purposes of this Order that Defendant is at increased risk based on his status as an asthmatic.

But high cholesterol, or hyperlipidemia, is not listed by the CDC as a condition that can make an adult of any age more likely to get "very sick" from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 16, 2022). Thus, the court does not consider high cholesterol (hyperlipidemia) as a condition that elevates Defendant's COVID-19 risk. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434-35 (5th Cir. 2021) (reasoning that "[t]he courts that granted compassionate release [on the basis of health conditions] largely have done so for defendants who had already served the lion's share of their sentences and

presented multiple, severe, health concerns" and not solely on the basis of "commonplace" conditions such as hypertension and hyperlipidemia).

Defendant argues that compassionate release is justified due to his "heightened risk of dying or becoming severely ill [based on his medical conditions] should he re-contract COVID-19." ECF No. 41-1 at PageID # 208. But Defendant appears to be receiving medical treatment for his conditions while incarcerated. *See, e.g.*, ECF No. 41-12 at PageID # 310 (Defendant's medical records indicating various prescriptions issued in 2021 for diagnosed conditions); *see also id*. at PageID # 288 ("[Defendant] is taking medication for asthma and hypertension."). Further, he has not demonstrated that the medical care he receives is any different from that received by other federally-incarcerated individuals, nor is there any evidence in the record suggesting that he is not receiving appropriate treatment for his medical conditions. *See, e.g.*, *United States v. DeMille*, 465 F. Supp. 3d 1144, 1149 (D. Or. 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." (citation omitted)).

And most significantly, Defendant's medical records indicate that he has been vaccinated against COVID-19 while in BOP custody, as noted above. *See* ECF No. 41-12 at PageID ## 361, 364 (indicating that Defendant received two doses of the Pfizer-BioNTech COVID-19 vaccine: one on December 30, 2020 and the other on January 19, 2021); *see also id.* at PageID ## 281, 288. Further, in late

July 2021, Defendant contracted—and later recovered from—COVID-19.  *See id*. at PageID # 261 (indicating, in an August 20, 2021 BOP medical record, that Defendant "[r]ecently had COVID, recovered, has no complaints"); *id*. at PageID # 267 (indicating that Defendant tested positive for COVID-19 on July 30, 2021); *id*. at PageID # 287 (indicating in an October 22, 2021 BOP Health Services Inmate Report that after testing positive for COVID-19, Defendant "completed the isolation period, per CDC Guidelines" and "denies" having signs or symptoms of COVID-19).  As a result, Defendant's risk of symptomatic infection is greatly diminished.  *See, e.g.*, *United States v. Hayes*, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions."); *United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1066 (S.D. Cal. 2021) ("Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19.'" (quoting *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021))).

    Further, current CDC reports state that the risk of infection remains "much lower" in vaccinated individuals and that vaccination makes illness less severe.  *The Possibility of COVID-19 After Vaccination: Breakthrough Infections*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

effectiveness/breakthrough-cases.html (last visited March 16, 2022).  As stated by the CDC,

> Research shows that the FDA-authorized vaccines offer protection against severe disease, hospitalization, and death against currently circulating variants in the United States.  However, some people who are fully vaccinated will get COVID-19. . . .  [But] the risk of infection, hospitalization, and death are all much lower in vaccinated compared to unvaccinated people.

*Id*.

Here, Defendant's COVID-19 vaccination status substantially mitigates the risks he faces.  Given these facts, Defendant's claim that he is at risk for severe illness from a breakthrough case is speculative.[5]  *See* ECF No. 41-1 at PageID # 209; *see also United States v. Beebe*, 2022 WL 779954, at *1 (9th Cir. Mar. 14, 2022) (mem.) (affirming district court order that "fully considered [a defendant's] arguments for release and reasonably rejected them because of the low rate of COVID-19 infection at the prison and because of the 'rare' risk of reinfection").

---

[5] In fact, as Defendant points out, he experienced a breakthrough case of COVID-19 in late July 2021.  ECF No. 41 at PageID # 201 ("[Defendant] was fully vaccinated when he himself contracted COVID-19.").  But as Defendant's medical records indicate, after his recovery from COVID-19, Defendant "ha[d] no complaints." ECF No. 41-12 at PageID # 261 (August 20, 2021 BOP medical record); *see also id*. at PageID # 287 (October 22, 2021 BOP medical record indicating that, at that time, Defendant "denie[d]" having signs or symptoms of COVID-19 after his positive test and recovery).

And finally, at 65 years old, Defendant is not in the age group at highest risk, although he does face an elevated risk. As stated by the CDC:

> Older adults are more likely to get very sick from COVID-19. Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited March 16, 2022).

Considering all of the evidence, Defendant's medical conditions, age, and the threat of contracting COVID-19 do not, separately or together, constitute extraordinary and compelling reasons justifying release.

### 2. *Defendant's Ability to Self-Care While Incarcerated*

Defendant further argues that "the [COVID-19] pandemic and the conditions at . . . Terminal Island hinder his ability to provide adequate self-care," thereby constituting an extraordinary and compelling reason justifying compassionate release. ECF No. 41-1 at PageID # 210. Defendant tethers this argument to his chronic spinal deformities, i.e., kyphosis, and his "inability to obtain physical therapy" for that condition due to the pandemic-related restrictions at Terminal Island. *See id.*; *see also* ECF No. 41-7 at PageID # 237 ("I've received no [physical therapy] . . . at Terminal Island.")

But Defendant's medical records indicate that he receives regular medical care and treatment—even during the COVID-19 pandemic—and that various accommodations have been made by BOP in recognition of Defendant's kyphosis-related medical needs. *See, e.g.*, ECF No. 41-12 at PageID # 311 (listing Defendant's kyphosis as a "current" condition); *see id*. at PageID # 284 (indicating that Defendant has been seen by an "on site" orthopedic specialist regarding neck pain related to his kyphosis). BOP has authorized Defendant to rest in bed for a period each day "to relieve pressure off his neck and lower back." *Id.* at PageID # 317 (authorizing Defendant to "lay in bed between the hours of 1030-1500" due to his spinal condition, with no end date); *see also id*. at PageID # 319. He is also authorized specialized medical equipment for his kyphosis-related neck pain, including a "padded neck brace." *See id*. at PageID ## 308, 317. Further, Defendant is permitted to "wear soft shoes at all times" and is specially designated a "lower bunk." *See id*. at PageID ## 317-18.

Although the court recognizes that Defendant may suffer hardships during his term of incarceration, Defendant's medical records confirm that he is being treated for his conditions, including his spinal condition, and that BOP has made demonstrable efforts to allow Defendant accommodations to care for himself given his kyphosis. Put differently, Defendant has not shown that his ability to "provide self-care" for his medical conditions, including his diagnosed kyphosis, is

13

"substantially diminishe[d]" while incarcerated at Terminal Island. Guideline § 1B1.13, Application Note 1(A)(i)-(ii). And when weighing all of Defendant's arguments under the court's discretion to consider "any extraordinary and compelling reason" for a sentencing reduction (unconstrained from the Sentencing Commission's policy statements), *Aruda*, 993 F.3d at 801, the court still finds that a sentencing reduction is not warranted by the facts presented in Defendant's Motion.

## IV. **CONCLUSION**

Taking into account all of Defendant's arguments in their totality, including the threat of serious or life-threatening illness from COVID-19 due to underlying medical conditions, age, and his claimed inability to self-care, the court concludes that he has failed to demonstrate extraordinary and compelling reasons warranting compassionate release. Accordingly, Defendant's Motion for Compassionate Release, ECF No. 41, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 16, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kunimura*, Cr. No. 19-00128 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF No. 41